**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

WAYNE KRIPPENDORF and                                                                PLAINTIFFS
GERALDEAN KRIPPENDORF, Individually and
to the Right and Benefit of CHRISTY KRIPPENDORF

v.                                            No. 4:05CV00888 JLH

DON MITCHELL and MITCHELL TOOL
& GAGE, INC.                                                                                      DEFENDANTS

**OPINION AND ORDER**

Plaintiffs Michael Wayne Krippendorf and Geraldean Krippendorf bring this action against Defendants Don Mitchell and Mitchell Tool & Gage, Inc., alleging violations of both the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"), and Arkansas state law. The parties filed a stipulated ERISA record, followed by individual briefs on the merits of the ERISA claims. For the following reasons, the Krippendorfs are entitled to judgment in part.

**I.**

Michael Wayne Krippendorf ("Krippendorf") worked for Mitchell Tool & Gage, Inc. ("Tool & Gage") as a salesperson. In addition to his salary and commissions, Krippendorf received health insurance benefits under an employee welfare plan sponsored by Tool & Gage and insured by Arkansas Blue Cross-Blue Shield ("Blue Cross-Blue Shield"). Under the plan, Tool & Gage deducted $86.89 from each of Krippendorf's bimonthly paychecks to cover a portion of the health insurance premium for Krippendorf and his family, and Tool & Gage paid the remainder of the premium.

Krippendorf quit his job on April 18, 2005, without advance notice. Tool & Gage deducted $86.89 for Krippendorf's health insurance from his final paycheck, which covered the period

between April 1 and April 15, 2005. As required by state law,[1] Tool & Gage's benefits administrator gave Krippendorf a "State of Arkansas Continuation of Coverage Election Form" and an "Application for Conversion Policy" so that he could continue his health insurance coverage if he elected to do so. Krippendorf completed these forms and returned them along with a check for the first month's health insurance premium, $768.15, at the beginning of May 2005. Krippendorf apparently believed that his insurance premium was covered through his entire period of employment and that the premium for the time period of April 1 through April 18 would be covered by the deduction from his final paycheck and by Tool & Gage's regular premium payment. Accordingly, Krippendorf's continuation of coverage form reflected a beginning date of April 18, 2005.

Tool & Gage cashed Krippendorf's check, but did not immediately send either the premium payment or Krippendorf's continuation of coverage form to Blue Cross-Blue Shield. Instead, at the beginning of May 2005, Don Mitchell, acting on behalf of Tool & Gage, cancelled Krippendorf's coverage retroactive to April 1, 2005. At the end of May 2005, unaware that his health insurance had been cancelled by Tool & Gage, Krippendorf sent Tool & Gage another check for $768.15 to cover his June insurance premium. Around this point in time Krippendorf's wife sought medical treatment and was informed that her health insurance had lapsed. Krippendorf then retrieved the last premium check he had sent to Tool & Gage, uncashed.

Also during May 2005, a dispute arose between Krippendorf and Mitchell regarding Krippendorf's remaining compensation. According to Krippendorf, Tool & Gage owed him, and continues to owe him, compensation for unpaid commissions earned during his employment, unpaid

---

[1] An Arkansas employer offering a group health insurance policy is required by Arkansas state law to offer continuation coverage for 120 days to an employee when his employment terminates. *See* ARK. CODE ANN. § 23-86-114 (2005).

vacation time, and employment-related cell phone expenses.  The defendants maintain that, under Tool & Gage's company policy, such compensation is not paid to employees who quit without giving two weeks' notice.  Krippendorf filed two actions against Mitchell on May 11, 2005, in Arkansas state court, seeking payment for the unpaid commissions, vacation pay, and cell phone expenses.  Mitchell filed motions to dismiss these actions for improper venue.

Sometime during the first week of June 2005, Tool & Gage sent Krippendorf's continuation of coverage form to Blue Cross-Blue Shield but still did not pay his health insurance premium.  On June 13, Krippendorf's attorney sent Mitchell's attorney a letter demanding redress for the defendants' alleged violations of state law in withholding Krippendorf's compensation and violations of ERISA in cancelling the insurance coverage.  This letter conceded that Mitchell's motions to dismiss Krippendorf's state court actions were well taken.  The letter further stated that Krippendorf would file suit in federal court if no settlement was reached, including reinstatement of health insurance benefits, before June 16.

Sometime during the middle of June, Tool & Gage sent a "Group Billing Summary" to Blue Cross-Blue Shield, again representing that Krippendorf had been dropped from coverage for the period of June 1 to July 1, 2005.  Even so, Tool & Gage did have Krippendorf's health insurance reinstated on or about June 16, 2005.  Tool & Gage did not notify Krippendorf or his attorney of this reinstatement, however, until June 27.  On June 16, unaware that his health insurance had been reinstated and having reached no settlement as to the other issues in dispute, Krippendorf filed this lawsuit, raising claims under ERISA regarding his health insurance coverage and under Arkansas state law regarding the alleged unpaid compensation.

## II.

Only the ERISA claims are presently before the Court. Krippendorf claims that Tool & Gage's group health insurance plan is governed by ERISA and that, under the plan, Tool & Gage was obligated to pay a portion of his health insurance premium each month. Krippendorf further claims that both defendants had fiduciary obligations under ERISA to send the appropriate premiums to Blue Cross-Blue Shield each month, that their failure to do so was a breach of that fiduciary duty, and that they now owe him an amount equal to the portion of his premium that Tool & Gage should have paid for the time period of April 1 to 18, 2005. Krippendorf further asserts that the defendants' actions in cancelling his insurance were taken in retaliation for quitting his job and that such retaliation violates ERISA's provision on interference with protected rights. Finally, Krippendorf seeks his attorney's fees and costs incurred in this action to enforce his ERISA rights. Each of these claims is addressed below.

### A.     Krippendorf's Health Insurance Premium

An "employee welfare benefit plan" or "welfare plan" governed by ERISA means "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . medical, surgical, or hospital care or benefits." 29 U.S.C. § 1002(1). Tool & Gage's group health insurance policy with Blue Cross-Blue Shield is thus an employee welfare benefit plan subject to ERISA regulations. ERISA provides that a participant or beneficiary of such a plan may bring a civil action "to recover benefits due to him under the terms of his plan [or] to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A reduced health insurance premium may be a benefit

under an ERISA plan and a plaintiff may therefore bring an action to enforce his right to this benefit. *Magliulo v. Metropolitan Life Ins. Co.*, 208 F.R.D. 55, 58 (S.D.N.Y. 2002).

The stipulated ERISA record submitted by the parties does not contain a written provision specifying the portion of an employee's monthly insurance premium Tool & Gage was obligated to pay. A formal, written plan, however, is not required. *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982). The ERISA record in this case shows that Tool & Gage deducted $86.89 from Krippendorf's April 1 to April 15 paycheck for "health," that Tool & Gage paid the premiums for covered employees to Blue Cross-Blue Shield each month, and that when Tool & Gage cancelled Krippendorf's insurance coverage it subtracted $775.95 from the total amount of employee premiums for this "adjustment." The Blue Cross-Blue Shield insurance policy submitted by Defendants also provides that the policyholder, Tool & Gage, "shall pay [Blue Cross-Blue Shield] the premiums for covered Employees and Dependents every month, in advance." The evidence therefore shows that, under the plan, Krippendorf was supposed to receive the benefit of health insurance coverage for the period of April 1 to 15 at a cost of only $86.89 to himself.

When Tool & Gage accepted Krippendorf's first monthly premium check for $768.15, it did not apply this money toward his continuation coverage, which should have begun after his employment terminated. Instead, it applied these funds retroactive to April 1, which covered a 15-day period of employment for which Krippendorf's premium should have already been paid by Tool & Gage. Thus, instead of getting insurance coverage for the first half of April at a cost of $86.89, Krippendorf got his insurance coverage for this period for the total cost of the $86.89 which had already been deducted from his paycheck *plus* $384.08 (one-half of the $768.15 premium for an entire month). Krippendorf is therefore entitled to $384.08, or the refund of his overpayment, so that

he will in fact receive the benefit of his April 1 to 15 health coverage at the proper price of $86.89 under Tool & Gage's plan.[2]

### B. Breach of Fiduciary Duty

Krippendorf also asserts that by failing to timely pay the insurance premiums to Blue Cross-Blue Shield, Tool & Gage and Mitchell, acting in his administrative capacity for Tool & Gage, breached a fiduciary duty. Krippendorf argues that Mitchell is jointly and severally liable with Tool & Gage for any judgment in Krippendorf's favor as to his ERISA claims.

A person is a fiduciary with respect to an ERISA plan to the extent that he exercises any discretionary authority respecting management of the plan or disposition of its assets or has any discretionary authority in its administration. 29 U.S.C. § 1002(21)(A). A fiduciary who breaches his duties is personally liable to the plan for any losses caused by the breach. 29 U.S.C. § 1109(a). Failure to pay insurance premiums according to an ERISA plan is a breach of fiduciary duty. *McFadden v. R&R Engine & Mach. Co.*, 102 F. Supp. 2d 458, 467-68 (N.D. Ohio 2000). Corporate owners, officers, and directors of an employer who sponsors an ERISA plan may be individually liable as fiduciaries to the extent that they maintain authority or control over the plan. *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1459 (9th Cir. 1995).

Tool & Gage, as the designated plan administrator, is a fiduciary. *See Torres v. UNUM Life Ins. Co. of Am.*, 405 F.3d 670, 681 (8th Cir. 2005) (ERISA requires all plan fiduciaries, a term that includes plan administrators, to discharge their duties in accordance with the plan). Krippendorf

---

[2] In his ERISA brief, Krippendorf asks for judgment in the amount of $297.18 in overpaid premium. This dollar amount was calculated as [$768.15 ÷ 2] - $86.89 = $297.18. This calculation fails to take into account that Krippendorf's share of the premium, $86.89, had already been deducted from his paycheck. The full measure of relief to which Krippendorf is entitled for his premium overpayment is thus $384.08.

maintains that Mitchell is also a fiduciary because he had control over the plan and the premium payments and he made the decision to cancel Krippendorf's insurance coverage. Even assuming that Mitchell is in fact a fiduciary with respect to Tool & Gage's ERISA plan and that the defendants breached their fiduciary duties by failing to pay the insurance premiums, however, ERISA provides that a fiduciary who commits such a breach is liable *to the ERISA plan* for any losses caused. *See* 29 U.S.C. § 1109(a). Krippendorf seeks redress for the losses that he personally sustained as a result of Tool & Gage and Mitchell's actions, but he has neither alleged that the defendants' actions caused a loss to the plan nor sought redress on behalf of the plan. If an individual plan participant suffers a loss, but the ERISA plan itself does not, a fiduciary is not personally liable for damages under section 1109. *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 919 (8th Cir. 1994).

In any event, if Tool & Gage pays the judgment on Krippendorf's claim to recover benefits pursuant to section 1132(a)(1)(B), discussed above, then Krippendorf's claim for breach of fiduciary duty will be moot, as he seeks repayment of his overpaid premium under both claims. If not, Krippendorf may raise his claim against Mitchell individually along with the state law claims at trial. Accordingly, the Court declines to enter judgment against Tool & Gage or Mitchell individually for breach of fiduciary duty.

  **C.**  **Retaliation**

ERISA provides that it is "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant of beneficiary for exercising any right to which he is entitled . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. In his amended and supplemented complaint, Krippendorf states that the defendants' actions in failing to pay both his

insurance premiums and his wages and commissions were taken in retaliation against Krippendorf to deliberately deny his ERISA-protected rights. Krippendorf thus asserts that the defendants violated section 1140.

In his ERISA brief, however, Krippendorf neither briefed this issue nor explained how the defendants' alleged conduct violates the statute. Krippendorf offers only the bald allegation that the defendants cancelled his insurance in retaliation for Krippendorf quitting his job. The plain language of the statute, however, prohibits retaliation against a plan participant for exercising his ERISA rights. Quitting one's job is not a protected right or activity under ERISA. Moreover, even assuming that intentionally cancelling a former employee's insurance in retaliation for quitting his job would be unlawful under section 1140, the ERISA record contains no evidence that the defendants actually did so. While the defendants cancelled Krippendorf's insurance, nothing in the record establishes that they had an improper motive or that their actions were not the result of administrative errors. Accordingly, Krippendorf's claim for retaliation is denied.

### D.     Attorney's Fees

In an ERISA action, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Eighth Circuit has identified five factors that district courts should consider in exercising discretion under this provision of ERISA: (1) the degree of the parties' culpability or bad faith; (2) the parties' ability to satisfy an award of attorney's fees; (3) whether such an award could deter other persons acting under similar circumstances; (4) whether the party requesting attorney's fees sought to benefit all participants of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. *Leonard v. Southwestern Bell Corp. Disability Income Plan*, 408

F.3d 528, 532 (8th Cir. 2005). A presumption in favor of awarding attorney's fees to prevailing plaintiffs should not be employed in ERISA cases. *Martin v. Ark. Blue Cross & Blue Shield*, 299 F.3d 966, 971-72 (8th Cir. 2002).

Krippendorf seeks a total of $3,952.50 in legal fees and costs. Krippendorf contends that attorney involvement was necessary to cause Tool & Gage to reinstate his health insurance, that Tool & Gage's failure to notify him of the reinstatement until after he had filed this lawsuit caused him to incur further legal costs, and that the attorney's fees sought are small relative to potential medical costs that could have been incurred had the insurance lapse not been corrected.

The defendants argue that Krippendorf should not receive an award of attorney's fees because the lapse in insurance was corrected and Krippendorf incurred no financial loss as a result of the temporary lapse. The defendants offer no explanation, however, as to why they have refused to pay the insurance premium, which is the basis of Krippendorf's ERISA claim. In their answer to Krippendorf's amended and supplemented complaint, the defendants admit that $86.89 was deducted from Krippendorf's April paycheck for his health insurance premium but assert that this amount represented one-half of the March premium paid in arrears. This argument does not aid the defendants' position for two reasons. First, the plan expressly states that Tool & Gage is required to pay the monthly premiums in advance, not after a coverage period has ended. While the record shows that Tool & Gage did in fact pay the premiums late, Krippendorf should not be penalized for Tool & Gage's failure to abide by the terms of the plan. Second, even if the $86.89 deducted from Krippendorf's April paycheck was applied to his portion of his premium for the last half of March, this fact would not explain why Tool & Gage refused to pay its portion of Krippendorf's premium for the period of April 1 to 15.

9

Four of the five factors enumerated in *Leonard* as factors that the Court should consider in deciding whether to award attorney's fees under ERISA support an award of fees in this case. The repeated deletion of Krippendorf from the group billing summaries sent to Blue Cross-Blue Shield was either grossly negligent or malicious, so the degree of culpability on the part of Tool & Gage is high. It appears from a review of the information in the record that Tool & Gage has the ability to satisfy an award of attorney's fees. An award of fees in this case is important to deter other employers from similar acts of gross negligence or malice. The relevant merits of the parties' positions likewise supports an award of fees.

The hourly rate charged by Krippendorf's counsel is reasonable. The time spent is reasonable. Therefore, the Court will award a total of $3,952.50 in legal fees and costs.

## CONCLUSION

On Krippendorf's ERISA claims, damages are ordered in the amount of $384.08. Attorney's fees are ordered in the amount of $3,952.50. Judgment will not be entered until after the trial on Krippendorf's state-law claims.

IT IS SO ORDERED this 13th day of January, 2006.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE